UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| LAUGHLIN ENERGY MOTOR SPORTS, LLC, | § § | |
| *Plaintiff* | § § | |
| v. | § § | CASE NO. 4:22-cv-00876-P |
| AMERICANA PRO DETAILING PRODUCTS LLC, | § § | |
| *Defendant* | § | |

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**
**UNDER RULES 12(B)(2) AND 12(B)(5) AND BRIEF IN SUPPORT**

MARK D. SMITH
State Bar No. 18648650
msmith@thompsonhorton.com

K. ADAM ROTHEY
State Bar No. 24051274
arothey@thompsonhorton.com

LEAH C. NORTHENER
State Bar No. 24101034
lnorthener@thompsonhorton.com

**THOMPSON & HORTON LLP**
500 North Akard Street, Suite 3150
Dallas, Texas 75201
(972) 853-5115 – Telephone
(972) 692-8334 – Facsimile

*Attorneys for Defendant Americana Pro*
*Detailing Products LLC*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

I.    SUMMARY OF THE ARGUMENT ................................................................... 1

II.   RELEVANT FACTUAL BACKGROUND ......................................................... 2

III.  STANDARD OF REVIEW ................................................................................. 4

IV.   ARGUMENT AND AUTHORITIES ................................................................. 6

      1.    This Court lacks specific personal jurisdiction over Americana. ........................ 6

      2.    Subjecting Americana to the jurisdiction of Texas would violate
            standards of reasonableness and fairness. ................................................. 12

      3.    Americana was not properly served in this case, depriving
            the Court of personal jurisdiction. ............................................................. 13

V.    CONCLUSION ................................................................................................. 15

CERTIFICATE OF SERVICE .......................................................................................... 16

# TABLE OF AUTHORITIES

## Cases

*Alfred v. Moore & Peterson*,
117 F.3d 278 (5th Cir. 1997) ............................................................................ 4

*Asahi Metal Indus. Co. v. Super. Ct. of Cal.*,
480 U.S. 102 (1987) ........................................................................................ 12

*Asset Protection & Sec. Servs., L.P. v. Armijo*,
570 S.W.3d 377 (Tex. App.—El Paso 2019, no pet.) ...................................... 14

*Balderas v. Nguyen*,
No. 3:19-CV-2826-D, 2020 WL 2495889 (N.D. Tex. May 14, 2020) .............. 4

*Barnes v. Frost Nat'l Bank*,
840 S.W.2d 747 (Tex. App.—San Antonio 1992, no writ) .............................. 13

*BHTT Entertainment, Inc. v. Brickhouse Café & Lounge, L.L.C.*,
858 F.3d 310 (5th Cir. 2017) .......................................................................... 13

*Black v. Wells Fargo Home Mortgage, Inc.*,
No. 3:16-CV-2719-M (BT), 2018 WL 3747919 (N.D. Tex. Jul. 9, 2018) .......... 4

*Bludworth Bond Shipyard, Inc. v. M/V Caribbean Wind*,
841 F.2d 646 (5th Cir. 1988) ..................................................................... 14, 15

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ....................................................................................... 5, 6

*City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*,
399 F.3d 651 (6th Cir. 2005) ............................................................................ 8

*Comm'n of Conts of Gen. Exec. Comm. of Petroleum Workers Union of Mexico v. Arriba, Ltd.*,
882 S.W.2d 576 (Tex. App.—Hous. [1st Dist.] 1994, no pet.) ........................ 14

*Command–Aire Corp. v. Ontario Mechanical Sales and Service, Inc.*,
963 F.2d 90 (5th Cir.1992) ................................................................................ 9

*D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*,
754 F.2d 542 (5th Cir. 1985) .......................................................................... 14

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) .......................................................... 5, 6

*DSF Lux Int'l v. Specialized Fin. Partners, L.L.C.*,
No. A-07-CA-742-LY, 2009 WL 10670341 (W.D. Tex. Sept. 18, 2009) ........ 14

*Elec. & Gas Tech., Inc. v. Universal Communication Sys., Inc.*,
 No. 3:03–CV–1798–G, 2003 WL 22838719 (N.D. Tex. Nov. 24, 2003) ...................... 11

*Fields v. SDH Services E., LLC*,
 No. 4:18-CV-01438, 2019 WL 1098369 (S.D. Tex. Mar. 7, 2019) ................................ 13

*Freight Terminals, Inc. v. RyderSys., Inc.*,
 461 F.2d 1046 (5th Cir. 1972) ..................................................................................... 13

*Freudensprung v. Offshore Tech. Servs.*,
 379 F.3d 327 (5th Cir. 2004) .......................................................................................... 7

*GMR Gymnastics Sales, Inc. v. Walz*,
 117 S.W.3d 57 (Tex. App.—Fort Worth 2003, pet. denied) ........................................... 14

*Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*,
 No. 16-CV-0134, 2017 WL 970383 (E.D. Tex. Mar. 1, 2017) ........................................ 6

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
 466 U.S. 408 (1984).................................................................................................. 7, 12

*Hennington v. United Parcel Service, Inc.*,
 No. 4:18-CV-00520, 2018 WL 6267768 (S.D. Tex. Nov. 30, 2018) .............................. 14

*Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*,
 700 F.2d 1026, 1029 (5th Cir. 1983) ............................................................................ 10

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
 No. H-10-171, 2011 WL 1232352 (S.D. Tex. Mar. 31, 2011) ......................................... 9

*International Shoe Co. v. State of Washington*,
 326 U.S. 310 (1945)..................................................................................................... 1, 5

*King v. Hawgwild Air LLC*,
 No. 3:08-CV-0153-L, 2008 WL 2620099 (N.D. Tex. Jun. 27, 2008) ......................... 7, 11

*Lansing Trade Group, LLC v. 3B Biofuels GmbH & Co, KG*,
 612 F. Supp. 2d 813 (S.D. Tex. 2009) ............................................................................ 9

*Latter & Blum of Tex., LLC v. Murphy*,
 No. 02-17-00463-CV, 2019 WL 3755765 (Tex. App.—Fort Worth Aug. 8, 2019, pet.
 denied) (mem. op.)........................................................................................................ 14

*Lucky v. Haynes*,
 No. 3:12–CV– 2609–B, 2013 WL 3054042 (N.D. Tex. June 18, 2013) .......................... 14

*Mateo v. TA HSIN, Inc.*,
 No. 7:19-CV-419, 2021 WL 3931915 (S.D. Tex. Feb. 10, 2021) ..................................... 8

*MaxoTech Solutions LLC v. PamTen Inc.*,
  No. 3:20-CV-1387-S, 2020 WL 6489015 (N.D. Tex. Nov. 3, 2020) ............................ 6, 9

*McFadin v. Gerber*,
  587 F.3d 753 (5th Cir. 2009) ........................................................................... 6, 7

*Moncrief Oil Int'l, Inc. v. OAO Gazprom*,
  481 F.3d 309 (5th Cir. 2007) .............................................................. 5, 7, 8, 9

*Null v. Bank One of Columbus, N.A.*,
  988 F.2d 1210 (5th Cir. 1993) (unpublished) ................................................. 11

*Patterson v. Aker Sols. Inc.*,
  826 F.3d 231 (5th Cir. 2016) ................................................................................ 6

*Royal Surplus Lines Ins. Co. v. Samaria Baptist Ch.*,
  840 S.W.2d 382 (Tex. 1992) ................................................................................ 14

*Ruston Gas Turbines v. Donaldson Co., Inc.*,
  9 F.3d 415 (5th Cir. 1993) ............................................................................... 4, 5

*Schlobohm v. Shapiro*,
  784 S.W.2d 355 (Tex. 1990) .................................................................................. 5

*Special Indus., Inc. v. Zamil Group Holding Co.*,
  578 F.App'x 325, 331 (5th Cir. 2014) .............................................................. 6, 9

*Stuart v. Spademan*,
  772 F.2d 1185 (5th Cir. 1985) .............................................................................. 4

*Thompson v. Chrysler Motors Corp.*,
  755 F.2d 1162 (5th Cir. 1985) .............................................................................. 4

*United Servs. Automobile Assoc. v. New Day Financial, LLC*,
  No. SA–17–CV–759–OLG, 2018 WL 1899807 (W.D. Tex. Mar. 8, 2018) ................... 11

*Walden v. Fiore*,
  571 U.S. 277 (2014) ............................................................................................... 6

*Whitney v. L & L Realty Corp.*,
  500 S.W.2d 94 (Tex. 1973) .................................................................................... 14

*Wilson v. Dunn*,
  800 S.W.2d 833 (Tex. 1990) .................................................................................. 15

**Statutes & Rules**

FED. R. EVID. 201 ...................................................................................................................4, 8

TEX. R. CIV. P. 12(B) ........................................................................................................1, 4, 15

TEX. R. CIV. P. 107(c) ........................................................................................................... 14

# I.
## SUMMARY OF THE ARGUMENT

Americana seeks dismissal of this suit under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5) because Americana is not subject to personal jurisdiction in the state of Texas and because it was improperly served. Laughlin's allegations, which are disputed, arise entirely out of a single contract that is silent as to jurisdiction, venue, choice of law, and place of performance. Any performance occasioned in Texas was a result of Laughlin's unilateral decisions, not Americana's direction. Accordingly, Americana does not have the requisite contacts with the State of Texas to warrant the exercise of specific personal jurisdiction by the courts of Texas, and maintenance of personal jurisdiction over Americana in Texas would offend "traditional notions of fair play and substantial justice" in violation of Americana's due process rights as interpreted by *International Shoe Co. v. State of Washington*, 326 U.S. 310 (1945), and its progeny.

Moreover, Americana was not properly served in this matter. The certified mail containing the Summons and Citation in this case omitted Americana's mailbox, or "suite" number from the mailing address which resulted in the Summons and Complaint being served on an employee for the commercial mailing company from which Americana rents a mailbox. In addition, the return receipt was not signed by Daniel Pikarsky, the registered agent for Americana as reflected in New York Department of State Division of Corporations entity information and addressee on the certified mail. Thus, Laughlin's purported service of process on Americana was defective and insufficient. Absent proper service of process, this Court also lacks personal jurisdiction over Americana.

## II.
## RELEVANT FACTUAL BACKGROUND

On May 11, 2022, Laughlin filed its Original Petition against Americana in the 266th Judicial District Court, Erath County, Texas (the "State-Court Suit"). *See* ECF No. 1, Ex. B. Then, on September 28, 2022, Americana removed the State-Court Suit to this court based on diversity jurisdiction. ECF No. 1. On October 13, 2022, pursuant to Court order, Laughlin filed its First Amended Complaint (the "Complaint") in this matter. ECF No. 9.

Americana is in the automotive detailing products business. App. 1, ¶ 2. Americana markets its products under the Hot Wheels Americana Series brand via a licensing agreement with Mattel, the registered trademark holder of Hot Wheels.[1] *Id.* Americana markets its products, in part, by sponsoring racecar drivers in the National Hot Rod Association ("NHRA"), who in turn promote Americana's products by prominently displaying Americana's logos and decals on their racecars and other racing vehicles, attire, and equipment at NHRA races and events across the country. *Id.* Through the Complaint, Laughlin purports to sue Americana for an alleged breach of contract and quantum meruit regarding a Sponsorship Agreement (the "Agreement") between the parties. ECF No. 9, at ¶ 7. As part of the Agreement, Laughlin agreed to display Americana's logo on its race vehicles and other marketing materials during select NHRA professional stock car races in exchange for $135,000.00 paid over four installments. App. 5–8, ¶¶ 1, 2, 4. In addition to displaying Americana's logo in exchange for $135,000.00, Laughlin agreed to make certain appearances on behalf of Americana for an additional fee of between $800.00 and $2,000.00 per day. *Id.* at ¶ 5. Laughlin does not allege that Americana paid or failed to pay Laughlin any appearance fees. *See generally,* ECF No. 9. Ultimately, Laughlin only alleges that Americana is

---

[1]     *See* https://americanapro.com/hotwheels/ (last visited Oct. 26, 2022).

liable for breach of contract and quantum meruit because it "fail[ed] to make the final two payments remaining under the contract" for logo placement which amounted to $67,500. *Id.* at ¶ 3.

Americana "is a non-resident limited liability company" "who does not maintain a registered agent [in Texas] for service of process." ECF No. 9, ¶ 2. As a result, Laughlin alleged that the Texas Secretary of State "is the agent for service" on Americana, citing Texas Civil Practice and Remedies Code section 17.044. *Id.* According to certification filed by the Texas Secretary of State in the State-Court Suit, Laughlin provided the Texas Secretary of State with a copy of the Citation and the Original Petition on May 19, 2022. App. 13. On June 14, 2022, the Texas Secretary of State forwarded the Citation to "Americana Pro Detailing Products, LLC, Daniel Pikarsky, 3793 Milton Avenue, Camillus, NY 13031," via Certified Mail/Return Receipt Requested. *Id.* "3793 Milton Avenue, Camillus, NY 13031" is the address for a private company called Post Etc., where individuals and companies like Americana rent mailboxes, or "suites" for receiving mail. App. 2, ¶ 3. However, the Original Petition and, consequently, the Citation and the Secretary of State, omitted Americana's mailbox, or "suite" number from the mailing address. App. 7–8, ¶ 2; App. 13; App. 15. On information and belief, because of the address error in the Secretary of State's mailing, an employee for Post Etc.—not a representative of Americana— signed the return receipt on June 21, 2022. App. 3, ¶ 6. No employee of Post Etc. is authorized to accept service on Americana's behalf. *Id.* Post Etc. further neglected to inform Americana that it had received certified mail. *Id.* at ¶ 5.

Daniel Pikarsky, Americana's sole member and registered agent, never signed the return receipt. *Id.* at ¶¶ 1, 6. A copy of the New York Department of State Division of Corporations Entity Information for Americana Pro Detailing Products, LLC, identifying Daniel Pikarsky as its

Registered Agent and providing the complete mailing address is attached.[2] App. 16–17. Americana's registered agent, Daniel Pikarsky, did not receive the certified mail containing notice of this lawsuit until September 14, 2022, when Post Etc. notified him that he had received an unrelated package in his mailbox. App. 2, ¶ 5. Only when Mr. Pikarsky arrived at Post Etc. for his package did he also find the citation and Original Petition for this case in his mailbox. *Id.*

Americana now moves to dismiss Laughlin's claims against it for lack of personal jurisdiction under Rule 12(b)(2) and 12(b)(5) of the Federal Rules of Civil Procedure.

## III.
## STANDARD OF REVIEW

Personal jurisdiction is improper over a nonresident defendant if the exercise of that jurisdiction is not permitted under the applicable laws of the forum state. *Alfred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997). It is well-settled that, as here, when a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) (citing *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)); *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545 (5th Cir. 1985).

Jurisdiction is proper in Texas federal courts if Texas's long-arm statute confers personal jurisdiction over the defendant and if the exercise of jurisdiction is consistent with due process under the United States Constitution. *Ruston Gas Turbines v. Donaldson Co., Inc.*, 9 F.3d 415, 418

---

[2]     Americana requests that the Court take judicial notice of Americana's address and registered agent information as reflected in the records of the New York Department of State Division of Corporations. This information is a matter of public record and not subject to reasonable dispute. FED. R EVID. 201; *see Black v. Wells Fargo Home Mortgage, Inc.*, No. 3:16-CV-2719-M (BT), 2018 WL 3747919, at *2 (N.D. Tex. Jul. 9, 2018) (taking judicial notice of a party's registered agent and address as reflected on the Texas Secretary of State's website); *Balderas v. Nguyen*, No. 3:19-CV-2826-D 2020 WL 2495889, at *3 (N.D. Tex. May 14, 2020) (same).

(5th Cir. 1993). The Texas Supreme Court has determined that the Texas long-arm statute extends to the limits of federal due process. *Id.* (citing *Schlobohm v. Shapiro*, 784 S.W.2d 355, 357 (Tex. 1990))*.* Thus, the Court must consider whether: (1) the defendants have established "minimum contacts" with the forum state, and (2) whether the exercise of personal jurisdiction over the defendants would offend "traditional notions of fair play and substantial justice." *Ruston*, 9 F.3d at 418 (*citing International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Both prongs must be met for the Court to exercise personal jurisdiction over a nonresident defendant. *Id.* Crucial to the minimum contacts analysis is a showing that a defendant should reasonably anticipate being haled into court in the forum state because the defendant has "purposefully availed" itself of the privilege of conducting activities there. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985). This test "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Id.* at 475.

The "minimum contacts" inquiry into personal jurisdiction has developed into two branches, contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). General jurisdiction exists "where a foreign corporation's continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Id*. Specific jurisdiction exists when "the suit 'aris[es] out of or relate[s] to the defendant's contacts with the forum.'" *Id*. However, it is clearly established that "merely contracting with a resident of the forum state does not establish minimum contacts" for purposes of establishing specific jurisdiction. *Moncrief Oil Int'l, Inc. v. OAO*

*Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007); *McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009) (citing *Burger King Corp.*, 471 U.S. at 478).

## IV.
## ARGUMENT AND AUTHORITIES

**1.      This Court lacks specific personal jurisdiction over Americana.**

Laughlin alleges that Americana is subject to specific personal jurisdiction in this Court.[3] ECF No. 9, ¶ 5. Specific jurisdiction focuses on "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014). Indeed, "[f]or a State to exercise jurisdiction consistent with due process, the defendant's *suit-related conduct* must create a substantial connection with the forum State." *Id.* at 284 (emphasis added). Factors to consider include: "(1) where the contract was formed; (2) where it would be performed; (3) the hub of the parties' activity; (4) where payments under the contract were tendered; (5) any choice of law provision in the contract; and (5) the foreseeability that a material part of the obligations under the contract would be performed in the forum." *MaxoTech Solutions LLC v. PamTen Inc.*, No. 3:20-CV-1387-S, 2020 WL 6489015, at *6 (N.D. Tex. Nov. 3, 2020) (citing *Special Indus., Inc. v. Zamil Group Holding Co.*, 578 F.App'x 325, 331 (5th Cir. 2014)). Specific jurisdiction requires that defendant's suit-related conduct arise out of contacts that the defendant itself creates with the forum state—not Laughlin or another third party. *Walden,* 571 U.S. at 284–85. In breach of contract cases, the defendant's contacts with Texas must relate to or arise from the alleged breach.

---

[3]      Plaintiff only alleges that this Court has specific jurisdiction over Americana. ECF No. 9, ¶ 2. However, even if he had pleaded general jurisdiction, he cannot show that Americana's contacts with Texas are so continuous and systematic to render it essentially at home in the State. *Daimler*, 571 U.S. at 127. Americana is not incorporated in Texas, nor does it maintain a principal place of business in Texas. App. 1, ¶ 2. Accordingly, this Court does not have general jurisdiction over Americana. *See, e.g., Patterson v. Aker Sols. Inc.*, 826 F.3d 231, 234 (5th Cir. 2016) (finding no general jurisdiction where defendant was incorporated in Norway and maintained principal place of business in Norway); *Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*, No. 16-CV-0134, 2017 WL 970383, at *4 (E.D. Tex. Mar. 1, 2017), report and recommendation adopted, No. 16-CV-134, 2017 WL 1154921, at *1 (E.D. Tex. Mar. 28, 2017) (finding no general jurisdiction where defendants were not incorporated in Texas and did not maintain a principal place of business in Texas).

*King v. Hawgwild Air LLC*, No. 3:08-CV-0153-L, 2008 WL 2620099, at *6 (N.D. Tex. Jun. 27, 2008) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984)).

The Complaint alleges only a few contacts that Laughlin contends are sufficient to confer specific jurisdiction over Americana:

- Americana contracted with Laughlin, a Texas resident;

- Americana made payments to under the Agreement to a resident of Texas;

- Americana required that the Agreement be performed in Texas through displaying of Americana's logo on Laughlin's equipment at races in Texas and allegedly requiring appearance by Laughlin at a convention in Texas;

- America "hoped" or "intended" to market, promote, and sell its products in Texas through its relationship with Laughlin;  and

- Americana advertises in Texas through other racecars that race in Texas.

ECF No. 9, ¶¶ 5–6, 8–10. Americana disputes the factual bases of several of these alleged contacts, including that Americana required any performance by Laughlin in Texas or "hoped" or "intended" to expand its business into Texas through its relationship with Laughlin. Americana further disputes that these alleged contacts are in fact contacts with Texas, as opposed to merely contacts with Laughlin, who happens to be a Texas resident. Ultimately, Americana disputes that these so-called contacts are sufficient to subject it to personal jurisdiction in Texas with respect to Laughlin's claims.

At the outset, it is well established that "merely contracting with a resident of the forum state does not establish minimum contacts," for purposes of establishing specific jurisdiction. *Moncrief Oil*, 481 F.3d at 311; *McFadin*, 587 F.3d at 760. Nor does payment to a Texas resident under such a contract confer specific jurisdiction. *Freudensprung v. Offshore Tech. Servs., Inc.*, 329 F.3d 327, 344 (5th Cir. 2004) (emphasizing that the Fifth Circuit has "repeatedly held" that the combination of mailing payments to the forum state, engaging in communications related to

execution of a contract, and the existence of a contract with a resident of the forum are insufficient to support the exercise of specific personal jurisdiction over a nonresident). Rather, the forum state must be "the hub of the parties' activities" under the contract to constitute jurisdictionally significant business activities in the forum state. *Moncrief Oil*, 481 F.3d at 312. And the forum state is *not* "clearly the hub" of the agreement where neither the contract nor the nature of the work at issue show a clear intent for performance in the forum state. *Id*. at 313.

Here, Laughlin has not alleged facts demonstrating that Texas is the "hub" of the parties' activities under the Agreement. First, Americana did not enter into the Agreement in Texas. App. 3, ¶ 7. Nor did Americana enter into the Agreement with Laughlin because Laughlin is in Texas or for the specific purpose of targeting the Texas market. *Id.* at ¶ 8. Moreover, the Agreement is silent as to location of Laughlin's performance, and there is no indication in the Agreement that the location of performance mattered to the parties. *See generally,* App. 5–6. In fact, nothing in the Agreement required either party to act in Texas. The Agreement merely called for Laughlin to display Americana's logo on its vehicles and other marketing materials during the sixteen NHRA Pro Stock Car races Laughlin planned to participate in during the 2018 season. *See* App. 5, ¶¶ 1, 4, 6. Those races took place all over the United States. According to the NHRA's website, of the twenty-four races scheduled for 2018, only two occurred in Texas, with the remainder occurring at locations from California to Florida. *See* 2018 NHRA Schedule at https://www.nhra.com/schedule/2018.[4] Thus, Texas cannot be reasonably deemed the "hub" of the Agreement since Americana had no specific intent to target Texas through the Agreement and the

---

[4]    Americana requests that the Court take judicial notice of 2018 NHRA schedule as reflected on the NHRA website. This information is not subject to reasonable dispute. FED. R EVID. 201; *see City of Monroe Employees Ret. Sys. v. Bridgestone Corp*., 399 F.3d 651, 655 n. 1 (6th Cir. 2005) (taking judicial notice of a term defined on the website of the National Association of Security Dealers, Inc.); *Mateo v. TA HSIN, Inc.*, No. 7:19-CV-419, 2021 WL 3931915, at *10 (S.D. Tex. Feb. 10, 2021) (taking judicial notice of the product website for Sweet'N Low).

Agreement itself did not require any performance in Texas at all. As a result, Americana could not reasonably anticipate being haled into court in Texas. *See Moncrief*, 481 F.3d at 313 (affirming dismissal and holding "[t]he contract was silent as to location"); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.,* No. H-10-171, 2011 WL 1232352, at *12–13 (S.D. Tex. Mar. 31, 2011) (declining to find specific jurisdiction and noting "[t]he contract . . . illustrates [] indifference toward Texas"); *Lansing Trade Group, LLC v. 3B Biofuels GmbH & Co, KG*, 612 F. Supp. 2d 813, 821 & 827 (S.D. Tex. 2009) (dismissing case and noting "[t]he contract did not call for performance in Texas" and also "[t]here is no indication that [the non-resident defendant] contracted with [the Texas plaintiff] because of its Texas location").

Moreover, contrary to Laughlin's allegations, the Agreement—and by extension Americana—did not control the location of Laughlin's performance or require that he display Americana's logos at any races in Texas. Indeed, the Agreement did not provide Americana any input regarding or control over which sixteen of the twenty-four races Laughlin participated in or, by extension, at what race locations its logo was displayed. *See generally,* App. 5–6. Laughlin had the unilateral authority to determine which races it participated in. And since only two of the possible twenty-four races in 2018 occurred in Texas, the vast majority of Laughlin's performance under the contract necessarily would have occurred outside Texas. This is a far cry from the Fifth Circuit's requirement that a "material" part of the contract be performed in Texas to confer jurisdiction. *MaxoTech,* 2020 WL 6489015, at *6 (citing *Special Indus., Inc.*, 578 F.App'x, at 331). And even if those two races were "material" to the Agreement, where "the forum plaintiff's decision to perform its contractual obligation within its own forum state is totally unilateral, it cannot be viewed as purposeful on the part of the nonresident." *Command–Aire Corp. v. Ontario Mechanical Sales and Service, Inc*., 963 F.2d 90, 94 (5th Cir.1992).

Laughlin's other allegations regarding performance under the Agreement do not change this analysis. Americana denies Laughlin's allegation that Americana "required that the contract be performed in Texas when it required … Laughlin to work Americana Pro's booth at a convention in Dallas, Texas marketing Americana Pro's products," as part of the alleged "display obligations of the contract." ECF No. 9, ¶¶ 5, 8–9. Americana never required Laughlin to appear at an Americana booth at a convention in Dallas, Texas in connection with the Agreement. On the contrary, on January 12, 2018, ten days *before* the parties entered into the Agreement, Americana and Laughlin appeared at a Mattel booth at a national automotive conference in Dallas, Texas, attended by individuals in the automotive industry from all over the country. App. 3, ¶ 7. As a result, Laughlin cannot claim that Americana contractually required its performance in Texas as a result of its appearance at a non-party's booth *before* the Agreement was even in place. Moreover, Americana only appeared at the Mattel/Hot Wheels booth at the direction of Mattel/Hot Wheels, its licensor and business partner, not for the purpose of consummating any agreement with Laughlin.[5] *Id*. And even if Americana had required Laughlin to work an Americana booth at a national convention in Texas—which it did not—the fact that the convention was located in Texas and not at any other convention center across the country is completely random and fortuitous and not the type of contact on which Americana could constitutionally be haled into a Texas court. As a result, Americana's limited presence in Texas for this national conference at the direction of a non-party and *before* it entered into the Agreement with Laughlin was in no way an effort by Americana to purposefully avail itself of the privilege of conducting business in Texas in connection with the Agreement and cannot serve as a basis to find specific jurisdiction in this case.

---

[5]     Even had Americana attended the conference for the purpose of consummating the Agreement—which it did not—the Fifth Circuit has held that trips by a company's executives to affirmative close a business deal do not rise to the level of minimum contacts. *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d 1026, 1029 (5th Cir. 1983).

*Elec. & Gas Tech., Inc. v. Universal Communication Sys., Inc.*, No. 3:03–CV–1798–G, 2003 WL 22838719, at \*4–5 (N.D. Tex. Nov. 24, 2003) (declining to find jurisdiction when defendant visited the forum to conduct business with a non-party as such a contact was too attenuated).

Laughlin's allegations that Americana "intended to leverage Laughlin's existing relationships to grow Americana Pro's products in the Texas market" are conclusory, incorrect, and insufficient to subject Americana to jurisdiction in Texas in any event. ECF No. 9, ¶ 6. Laughlin fails to allege any specific facts that would support his conclusory allegation that Americana intended to serve the Texas market through the Agreement. Moreover, as discussed above, Americana avers that it did not enter into the Agreement with any specific intent of serving the Texas Market. App. 3, ¶ 8. On the contrary, Americana's Agreement with Laughlin is the best evidence of the parties' intent, which contemplated *national* brand exposure for Americana at NHRA events around the country, the vast majority of which were *not* in Texas. *Id.* As a result, these allegations do not support exercising personal jurisdiction over Americana in Texas. *Null v. Bank One of Columbus, N.A.*, 988 F.2d 1210, at \*2 (5th Cir. 1993) (unpublished) ("[N]ational advertising alone cannot establish specific jurisdiction."); *United Servs. Automobile Assoc. v. New Day Financial, LLC*, No. SA–17–CV–759–OLG, 2018 WL 1899807, at \*2 (W.D. Tex. Mar. 8, 2018).

Finally, Americana does not sponsor any other Texas-based racecar drivers or require that any of its sponsored drivers perform in Texas. App. 1–2, ¶ 2. Rather, Americana has relationships with a handful of drivers from all over the country. *Id.* And those drivers, like Laughlin did, display Americana's logo on their racing equipment at wherever they choose to race in the NHRA circuit. *Id.* However, even if Americana had contracted with other Texas drivers—which it has not—such a contact has no relation to the Agreement and cannot form the basis of specific jurisdiction. *King*,

2008 WL 2620099, at *6 (citing *Helicopteros*, 466 U.S., 414 n. 8). Accordingly, these allegations do nothing to establish specific personal jurisdiction over Americana.

In sum, Americana did not purposefully avail itself to a Texas forum and any contacts with Texas were, at best, based on *Laughlin's* unilateral decision to perform its obligations under the Agreement there. Because Laughlin has failed to show this Court has specific jurisdiction over Americana, this Court should dismiss for want of personal jurisdiction.

## 2. Subjecting Americana to the jurisdiction of Texas would violate standards of reasonableness and fairness.

Even if Americana had sufficient contacts with Texas—which it does not—the Court must still consider whether exercising personal jurisdiction over Americana would offend traditional notions of fair play and substantial justice. In order to determine whether the exercise of personal jurisdiction is reasonable and fair, a court must weigh (1) the burden on the defendant, (2) the forum's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the states in furthering fundamental substantive social policies. *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 113 (1987). A balancing of these factors establishes that exercising personal jurisdiction over Americana would be unfair.

Here, Laughlin has not shown Americana has the minimum contacts necessary to be subjected to jurisdiction in Texas. Moreover, Americana is not based in Texas and maintains no presence in Texas. App. 1, ¶ 2. Rather, it is a single member LLC based in Syracuse, New York. *Id.* Thus, Americana would have to incur significant expenses and burden defending this suit in Texas. Requiring Americana to defend a breach of contract case in Texas would also be unfair considering that the Agreement did not contemplate performance in Texas or governance by Texas law and therefore did not put Americana on notice that it would be haled into a Texas court to

resolve any disputes. Texas also has limited interest in adjudicating a dispute involving a contract calling for performance all over the country by Laughlin, including potentially in New York, based on an alleged breach by a New York company that has no ties to Texas. Moreover, the most effective and efficient resolution of the controversy would be in New York, where Americana has its business presence and assets. Balancing these factors, and in light of the lack of minimum contacts, the Court should dismiss this action because exercising personal jurisdiction over Americana would also offend the traditional notions of fair play or substantial justice.

**3.    Americana was not properly served in this case, depriving the Court of personal jurisdiction.**

"The validity or invalidity of service of a defendant in a federal district court is governed by federal law, and the federal law of service is provided by Federal Rule of Civil Procedure 4." *BHTT Entertainment, Inc. v. Brickhouse Café & Lounge, L.L.C.*, 858 F.3d 310, 315 (5th Cir. 2017). However, where the case has been removed to federal court, "state law ascertains whether service was properly made prior to removal." *Fields v. SDH Services E., LLC*, No. 4:18-CV-01438, 2019 WL 1098369, at *2 (S.D. Tex. Mar. 7, 2019) (citing *Freight Terminals, Inc. v. RyderSys., Inc.*, 461 F.2d 1046,1052 (5th Cir. 1972)). Because Laughlin commenced the State-Court Suit before Americana's removal, Texas law controls.

Under Texas law, when service is effected via Texas's long-arm statute through the Texas Secretary of State, the return of service filed by the Laughlin must show that the Secretary of State complied with the requirements of the long-arm statute by forwarding service of process to the address of the defendant's home or home office. *See Barnes v. Frost Nat'l Bank*, 840 S.W.2d 747, 749 (Tex. App.—San Antonio 1992, no writ). Where the plaintiff provides an incorrect address to the Secretary of State, the defendant does not receive notice, and "due process would not be observed." *Id.* at 750. Thus, service of process is invalid if the Secretary of State sends the

summons and complaint to a nonresident defendant using an incorrect address. *See Bludworth Bond Shipyard, Inc. v. M/V Caribbean Wind*, 841 F.2d 646, 650 (5th Cir. 1988) (reversing default judgment because service of process was not sent to defendant's current and correct address); *GMR Gymnastics Sales, Inc. v. Walz*, 117 S.W.3d 57, 59 n.1 (Tex. App.—Fort Worth 2003, pet. denied) (reversing default judgment because return of service did not show that Secretary of State complied with long-arm statute by forwarding service of process to defendant's correct address); *Comm'n of Conts of Gen. Exec. Comm. of Petroleum Workers Union of Mexico v. Arriba, Ltd.,* 882 S.W.2d 576, 585 (Tex. App.—Hous. [1st Dist.] 1994, no pet.) (citing *Royal Surplus Lines Ins. Co. v. Samaria Baptist Ch.*, 840 S.W.2d 382, 383 (Tex. 1992)).

Furthermore, Texas law requires that, when service of process is effected by certified mail, the return of service must contain the return receipt with the *addressee's* signature. TEX. R. CIV. P. 107(c); *see Latter & Blum of Tex., LLC v. Murphy*, No. 02-17-00463-CV, 2019 WL 3755765, at *9 (Tex. App.—Fort Worth Aug. 8, 2019, pet. denied) (mem. op.); *Asset Protection & Sec. Servs., L.P. v. Armijo*, 570 S.W.3d 377, 383 (Tex. App.—El Paso 2019, no pet.); *Lucky v. Haynes*, No. 3:12–CV– 2609–B, 2013 WL 3054042, at *2 (N.D. Tex. June 18, 2013) ("[W]hen certified mail has been selected as the method of service, Texas law requires that the return receipt be signed by the addressee."). "If the return receipt is signed by someone else, service of process is defective." *Hennington v. United Parcel Service, Inc.*, No. 4:18-CV-00520, 2018 WL 6267768, at *2 (S.D. Tex. Nov. 30, 2018). At base, lack of *strict compliance* with the law relating to proper service renders any attempted service invalid. *DSF Lux Int'l v. Specialized Fin. Partners, L.L.C.*, No. A-07-CA-742-LY, 2009 WL 10670341, at *2 (W.D. Tex. Sept. 18, 2009) ("If service of process is not executed in strict compliance with Texas state law, the court cannot acquire proper jurisdiction over the defendant.") (citing *Whitney v. L & L Realty Corp.*, 500 S.W.2d 94, 96 (Tex.

1973). Even actual notice, without proper service, does not grant the court personal jurisdiction over the defendant. *Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex. 1990).

Here, the Summons and Complaint were not served by certified mail, return receipt requested at the correct address for the registered agent for Americana. The Original Petition and, consequently, the Citation and the Secretary of State, omitted Americana's mailbox, or "suite" number from the mailing address. This resulted in the Summons and Complaint being served on an employee for Post Etc., and *not* Americana. No return receipt was filed in this case, and the Secretary of State's Certification only states that the return receipt "was received in this office dated June 21, 2022, bearing signature," but does not indicate whose signature the return receipt bore. On information and belief, an employee for Post Etc. signed the return receipt. Mr. Pikarsky avers, however, that he did not sign the return receipt. App. 3, ¶ 6. Thus, Laughlin's purported service of process on Americana was defective and insufficient under Rule 12(b)(5) because the return receipt was not signed by Mr. Pikarsky and because it was not mailed to Americana's correct address as reflected in public records of the New York Department of State Division of Corporations. Absent proper service of process, this Court lacks personal jurisdiction over Americana. *See Bludworth* 841 F.2d 646, 650.

## V.
## CONCLUSION

This Court lacks personal jurisdiction over Americana. Americana is a New York Limited Liability Company that maintains its principal place of business in New York. Americana does not do business in Texas and has not purposefully availed itself of Texas's laws. In fact, Americana's only connection with the State of Texas with respect to this lawsuit is a singular contract it entered into with a Texas citizen. Because the contract did not require performance in Texas, this is insufficient to find personal jurisdiction over Americana. Moreover, Laughlin failed to effectuate

proper service upon Americana. This failure of service likewise deprives the Court of personal jurisdiction over Americana. Based on the foregoing, the Court must dismiss this action for want of jurisdiction.

Respectfully submitted,

*/s/     Adam Rothey*
MARK D. SMITH
State Bar No. 18648650
msmith@thompsonhorton.com

K. ADAM ROTHEY
State Bar No. 24051274
arothey@thompsonhorton.com

LEAH C. NORTHENER
State Bar No. 24101034
lnorthener@thompsonhorton.com

**THOMPSON & HORTON LLP**
500 North Akard Street, Suite 3150
Dallas, Texas 75201
(972) 853-5115 – Telephone
(972) 692-8334 – Facsimile

*Attorneys for Defendant Americana Pro Detailing Products LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a copy of the foregoing was served on counsel of record for all parties via the Court's electronic filing system on this 27th day of October, 2022.

Sidney T. Lange
Ross A. Vitek
Vitek Lange PLLC
300 Throckmorton St., Suite 650
Fort Worth, Texas 76102

*/s/     Adam Rothey*
K. ADAM ROTHEY